IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PEGGY A. LILLESTRAND, | ) | |
| | ) | |
| Plaintiff | ) | Civil No.08-652-KI |
| | ) | |
| v. | ) | OPINION AND |
| | ) | ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MERRILL SCHNEIDER
P.O. Box 16310
Portland, Oregon 97292-0310
    Attorney for Plaintiff

KENT ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

FRANCO L. BECIA
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

KING, District Judge:

Plaintiff Peggy Lillestrand ("Lillestrand") seeks judicial review of the Social Security Commissioner's final decision denying her application for benefits under Title II of the Social Security Act (the "Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be REVERSED and REMANDED for the reasons below.

## BACKGROUND

Born in 1945 (Tr. 52), Lillestrand completed more than four years of college. Tr. 65.[1] Lillestrand reports work as a technical editor and program representative between 1989 and 2000. Tr. 67. Lillestrand applied for DIB on April 27, 2005, claiming disability since October 1, 2001. Tr. 52. Lillestrand initially alleged disability due to fibromyalgia, arthritis, depression, hypothyroidism, chronic anemia, and lack of cartilage in her right knee. Tr. 60.

The Commissioner denied Lillestrand's applications initially and upon reconsideration. Tr. 40-51. An Administrative Law Judge ("ALJ") held a hearing on June 12, 2007, and subsequently found Lillestrand not disabled on August 27, 2007. Tr. 16-22. The Appeals Council accepted additional evidence into the record but denied review on April 2, 2008. Tr. 4-7.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on December 10, 2008 (Docket #7).

she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e); Social Security Ruling ("SSR") 96-8p (*available at* 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. 20 C.F.R. § 404.1512(a).

If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Lillestrand's fibromyalgia and right knee impairment "severe" at step two in the sequential proceedings. Tr. 18. The ALJ found that these impairments did not meet or equal an impairment "listed" in the Commissioner's regulations, and found that Lillestrand has the residual functional capacity to perform a full range of sedentary work. Tr. 18. The ALJ subsequently found Lillestrand able to perform her past relevant work as a program representative or administrative assistant and general clerk. Tr. 21. The ALJ therefore found Lillestrand not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

**DISCUSSION**

Lillestrand contends that the ALJ improperly assessed her credibility, erroneously rejected two physician opinions, inappropriately rejected a lay witness's testimony, and consequently erroneously assessed her RFC and her ability to perform her past relevant work.

## I.    The ALJ's Credibility Finding

Lillestrand asserts that the ALJ inappropriately considered her credibility. The ALJ found Lillestrand's statements regarding her symptoms and limitations "not credible." Tr. 20. The ALJ based this finding upon alleged discrepancies between Lillestrand's testimony and reports of her treating and examining physicians, Lillestrand's activities of daily living, Lillestrand's alleged lack of treatment, and Lillestrand's "unpersuasive appearance, presentation and demeanor." *Id.*

### A.    Credibility Standard

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ

ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

**B.     Analysis**

    **a.     Activities of Daily Living**

The ALJ found that Lillestrand "described daily activities which are fairly limited" but found these reported limitations inconsistent with "information contained in the documentary report and the reports of the treating and examining practitioners." Tr. 20.

An ALJ's finding that a claimant is not credible may rely upon a finding that a claimant's testimony is internally inconsistent. *Smolen*, 80 F.3d at 1284. The ALJ may also find the claimant's activities inconsistent with allegations of disability. *Lingenfelter*, 504 F.3d at 1040. Here, the ALJ noted Lillestrand's report that she does not have the energy to complete household chores, but that she cares for pets, reads the paper, watches television, and goes outside if the weather permits. Tr. 19. These activities are not internally inconsistent; Lillestrand did not report that she completes other household chores or more strenuous activities. Furthermore, Lillestrand's activities are consistent with an allegation of disability; a claimant need not "vegetate in a dark room." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). For these reasons the ALJ's citation to Lillestrand's activities of daily living falls short of the "clear and convincing" standard.

The ALJ also found that Lillestrand's "allegedly limited daily activities cannot be objectively verified with any certainty," and that "even if [Lillestrand's] daily activities are truly as limited as

alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition . . . in view of the relatively weak medical evidence and other factors discussed in this decision." Tr. 20. The Commissioner need not objectively verify a claimant's activities of daily living. Further, the claimant need not conclusively establish that a link exists between her activities of daily living and her alleged disability; it is enough that the documented impairment could plausibly cause the reported symptoms which in turn limit the claimant's activities. *Bunnell*, 947 F.3d at 346. Therefore, the ALJ's finding that Lillestrand's alleged limitations in her activities of daily living are unrelated to her disability is also not sustained.

    **b.**  **Failure to Seek Treatment**

  The ALJ inferred that Lillestrand failed to seek treatment, stating that "the claimant has not generally received on-going and continuous medical treatment of the type one would expect for a totally disabled individual . . . ." Tr. 20. An ALJ may consider the extent of a claimant's treatment history throughout the record. SSR 96-7p at *5 (*available at* 1996 WL 374186). The ALJ may also consider the longitudinal nature of the treatment of record and the "success or failure" of treatment. *Id.* at *7. Finally the ALJ may cite a claimant's unexplained failure to seek treatment. *Lingenfelter*, 504 F.3d at 1038; *Smolen*, 80 F.3d at 1284. However, the ALJ's finding that Lillestrand's treatment is inconsistent with an unidentified "type" of treatment expected of a disabled individual does not conform to this standard. This finding is not sustained.

    **c.**  **Lillestrand's Appearance and Demeanor**

  The ALJ cited a DDS interviewer's report stating that in the course of a telephone interview the interviewer "did not observe or perceive the claimant having any problem hearing, reading,

7 - OPINION AND ORDER

breathing, understanding, being coherent, concentrating, talking or answering." *Id.* (citing Ex. 1E2). The ALJ also stated that "another factor influencing" his conclusion was Lillestrand's "generally unpersuasive appearance, presentation and demeanor while testifying at the hearing." Tr. 20.

The ALJ may consider agency observations of a claimant's conduct. SSR 96-7p at *5. However, on her Function Report submitted to DDS Lillestrand specifically declined to indicate that she alleges disability due to difficulties in talking, hearing, memory, understanding, and following instructions. Tr. 103. Instead, Lillestrand repeatedly stated on her Function Report that her alleged disability stems from her physical limitations. Tr. 95-105. At her hearing Lillestrand testified that she "has a hard time concentrating and remembering" and that she has difficulty following "things that have steps." Tr. 369. The ALJ's reliance on the telephone interviewer's report that Lillestrand can hear, read, breathe, talk, and answer coherently is not relevant to his analysis of Lillestrand's credibility. Further, the ALJ's finding that the agency report shows that she may understand and concentrate does not address sequential instructions. This aspect of the report is also consistent with Lillestrand's testimony. The ALJ's reliance upon the DDS interviewer report to discredit Lillestrand is therefore not sustained.

Finally, the ALJ's finding that Lillestrand had a "generally unpersuasive" demeanor at her hearing flatly contradicts the applicable legal standards governing analysis of a claimant's credibility. An ALJ may rely upon specific observations which contradict a claimant's assertions or the record. *Verduzco v. Halter*, 188 F.3d 1087, 1090 (9th Cir. 1999). However, the ALJ may not rely upon "sit and squirm" jurisprudence. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). The ALJ's "generally unpersuasive" finding fails to identify the manner in which Lillestrand's conduct at her

8 - OPINION AND ORDER

hearing is inconsistent with her disability claim. This reasoning is therefore explicitly rejected.

In summary, the ALJ failed to provide adequately clear and convincing reasons for finding Lillestrand not credible. The ALJ's credibility determination is not sustained.

## II.    Medical Source Statements

Lillestrand challenges the ALJ's assessment of treating physician Dr. Sutherland and examining physician Dr. O'Shea.

### A.    Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* The ALJ may also reject a physician's opinion unsupported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B.    Treating Physician Dr. Sutherland

Lillestrand challenges the ALJ's analysis of treating physician Dr. Sutherland. Pl.'s Opening Br. 6-9.

Dr. Sutherland was Lillestrand's primary treating physician throughout the period under review. Between December 2001 and September 2005 Dr. Sutherland assessed hypothyroidism, chronic pain syndrome, pernicious anemia, fibromyalgia, degenerative arthritis, of the hips and knees, and right knee pain. Tr. 160-61, 164, 166, 169, 174-75. On May 30, 2007, Dr. Sutherland completed a form submitted by Lillestrand's attorney. Tr. 218-21.

The ALJ cited Dr. Sutherland's May 30, 2007, questionnaire responses and subsequently

gave Dr. Sutherland's opinion "little weight." Tr. 21. The ALJ reasoned that the limitations indicated by Dr. Sutherland are "not supported by the medical records and they are not consistent with other substantial evidence of record. These drastic differences may be the possible result of sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material by the patient." *Id.*

This analysis is flawed in two respects. First, the ALJ omitted consideration of Dr. Sutherland's clinical notes and opinions produced between December 2001 and September 2005. These notes show that Dr. Sutherland made her diagnoses based upon clinical examination and observations over a period spanning more than four years. The ALJ's finding that Dr. Sutherland's May 2007 opinion is inconsistent with the record fails also to account for Dr. Sutherland's own clinical notes, which constitute a significant portion of the record. *See* Tr. 159-83, 218-221, 298-300

Second, the ALJ's comment regarding Dr. Sutherland's "possible" sympathy for the patient or desire to "avoid unnecessary tension" is unwarranted speculation. The record does not indicate that Dr. Sutherland assumed an improper role as an advocate, or submitted statements that did not represent her clinical opinion. *See id.* The ALJ's inference that Dr. Sutherland's opinion was inappropriately rendered is not based upon the record.

For these reasons, the ALJ's assessment of Dr. Sutherland's opinion is not sustained.

### C.     Examining Physician Dr. O'Shea

Lillestrand also contends that the ALJ erroneously evaluated an examination report and subsequent questionnaire submitted by examining orthopedist Dr. O'Shea. Pl.'s Opening Br. 9-11. The record indicates that Dr. O'Shea is an orthopedic surgeon specializing in the knee. Tr. 223.

Dr. O'Shea evaluated Lillestrand's knee on May 21, 2007. Tr. 223-225. Dr. O'Shea conducted a clinical examination and indicated that Lillestrand has degenerative joint disease ("DJD") of the right knee. Tr. 225. Dr. O'Shea's handwritten annotation shows that he gave Lillestrand information regarding conservative versus surgical treatment, and recommended physical therapy. Tr. 225.

On June 5, 2007, Dr. O'Shea completed a form submitted by Lillestrand's attorney. Tr. 230-32. Here Dr. O'Shea indicated that he evaluated Lillestrand once, on May 21, 2007, and that he can attest to her oesteoarthritis of her right knee only. Tr. 230. Dr. O'Shea affirmed that Lillestrand has an impairment involving "one major peripheral weight bearing joint . . . resulting in an inability to ambulate" as defined in the Commissioner's regulations. Tr. 231. Dr. O'Shea declined to answer questions regarding Lillestrand's lifting ability, and stated that she may walk less than two hours in an eight-hour shift, and must periodically alternate sitting and standing to relieve pain or discomfort. *Id.* Dr. O'Shea stated that Lillestrand is limited in her ability to push or pull with her lower extremities and may never climb, balance, stoop, kneel, crouch, or crawl. Finally, Dr. O'Shea indicated that Lillestrand's knee impairment would not cause her to miss more than two days of work per month. *Id.*

The ALJ recited Dr. O'Shea's limitations and concluded, "I give little weight to these findings as they appear to be based on one evaluation and are too restrictive." Tr. 20. The ALJ's analysis is insufficient. A physician's opinion may be predicated upon one visit. *See Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (finding that one visit may suffice to establish a relationship with a treating physician). Further, the ALJ made no explanation for his finding that

Dr. O'Shea's opinion is "too restrictive." Tr. 20. For both of these reasons, the ALJ's assessment of Dr. O'Shea's opinion is not sustained.

### D. Additional Omissions

The record shows that Lillestrand received treatment from physicians respectively specializing in fibromyalgia and orthopedics at Oregon Health Sciences University ("OHSU") between March 28, 2001, and April 19, 2006. Tr. 131-43; 324-338. Here Dr. Dodson assessed "possible fibrositis" on July 9, 2003 (Tr. 131) and Dr. Kim diagnosed fibromyalgia on April 19, 2006. Tr. 324-38. Orthopedist Dr. Vigeland assessed Lillestrand's right knee pain between March 28, 2001 and February 13, 2002. Tr. 134-37. Except for a brief citation an unidentified fibromyalgia diagnosis at "Ex. 20F4" the ALJ omitted discussion of these records. Tr. 20. While the ALJ need not discuss all evidence of record, he may not omit evidence that is "significant or probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Lillestrand's OHSU records document her specialist evaluation of her impairments over approximately five years. This period is significant, and the ALJ therefore erred in failing to address these records.

### E. Conclusion: Medical Source Statements

In summary, the ALJ erroneously evaluated the opinions of Drs. Sutherland and O'Shea, and omitted the opinions of Drs. Dodson, Vigeland, and Kim.

## III. Lay Witness Testimony

Lillestrand challenges the ALJ's analysis of testimony submitted by her husband, John Lillestrand.

### A. Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting his testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

**B.     Analysis**

John Lillestrand completed a third party report on June 8, 2005. Tr. 83-94. John Lillestrand indicated that he and Lillestrand together feed their cats, make coffee, and read the paper. Tr. 83. He also stated that Lillestrand cross-stitches and can do approximately one-half hour of unspecified chores per week. John Lillestrand concurrently indicated that Lillestrand feeds the cats only when "possible" and that he takes the cats to the vet. Tr. 84. John Lillestrand also wrote that Lillestrand's ability to prepare food is limited, that she is able to do some laundry, and that she cannot stand very long due to pain. Tr. 85. He indicated that Lillestrand is limited in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using her hands, and that Lillestrand can walk thirty yards and then must rest up to half an hour, depending upon the length of walking. Tr. 88. Finally, John Lillestrand wrote that Lillstrand has no difficulty hearing and "can follow instructions providing the task is simple and not time consuming." *Id.* John Lillistrand also indicated that Lillestrand uses a cane when walking and as an aid in getting out of a chair or bed. Tr. 89.

The ALJ cited John Lillestrand's testimony that Lillestrand "feeds the cats, makes coffee, reads the paper, watches television, cross-stitches, does brief chores and occasionally goes to the library or goes shopping for food." Tr. 20. As with Lillestrand's testimony, the ALJ found John Lillestrand's third party report "not credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners." *Id.*

The ALJ must give germane reasons for rejecting a lay witness's testimony. *Nguyen*, 100 F.3d at 1467. While the ALJ may reject lay testimony that is inconsistent with medical evidence, *Lewis*, 236 F.3d at 512, the ALJ did not presently explain the discrepancies he found between John Lillestrand's testimony and unidentified "documentary" reports and other physician reports of record. This is reasoning is not germane to John Lillestrand, and is not properly developed. The ALJ's rejection of the lay testimony is therefore not sustained.

**IV.    The ALJ's Step Two Analysis**

Lillestrand asserts that the ALJ erroneously omitted her right shoulder pain from his step two analysis. Pl.'s Opening Br. 12-14. The ALJ did not discuss Lillestrand's right shoulder pain.

The burden remains upon the plaintiff to provide evidence of a medically determinable impairments and its effects; the Commissioner will consider "only impairment(s) you say you have or about which we receive evidence." 20 C.F.R. § 404.1512(a). *See* also *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The reviewing court will not find error where the plaintiff failed to present an allegation of disability and relevant evidence of limitations at an earlier stage in the proceedings. *Burch*, 400 F.3d at 683. Lillestrand did not state that her right shoulder created work-

related limitations at any time in her initial disability applications (Tr. 62-61), subsequent requests for appeal (Tr. 110, 118) or at her hearing before the ALJ. Tr. 363-69. Therefore, the ALJ did not error in failing to consider the impairment at step two.

## V.     The ALJ's Step Three Analysis

Finally, Lillestrand asserts that the ALJ failed to properly consider whether she met listing 1.02 at step three in the sequential proceedings. Pl.'s Opening Br. 11-12. Lillestrand asserts that the ALJ failed to note that Dr. Sutherland stated she meets Listing 1.02A.

In response to a question from Lillestrand's attorney, Dr. Sutherland indicated that Listing 1.02A "applies" to Lillestrand. Tr. 219. Listing 1.02 describes major dysfunction of a weight-bearing joint "characterized by gross anatomical deformity." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. The Listing also requires "inability to ambulate effectively," as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(b)(1). *Id.* Ineffective ambulation in turn "means an extreme limitation of the ability to walk . . . Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both extremities. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(b)(1).

Lillestrand now asserts that her occasional use of canes and difficulty navigating rough terrain establishes "ineffective ambulation." Pl.'s Opening Br. 12. Though examining physician Dr. Nathan Margaret agreed with Lillestrand's assertion that she should use one cane in negotiating rough terrain (Tr. 187), no other evidence of record suggests that Lillestrand requires two canes. Treating physician Dr. Sutherland wrote that Lillestrand reported using two canes on one occasion,

15 - OPINION AND ORDER

but made no recommendation or prescription for canes. Tr. 166. The record does not support Lillestrand's claim that she cannot effectively ambulate under the Regulations. Lillestrand therefore fails to show that she meets Listing 1.02A by meeting Listing 1.00(b)(1).

### VI.  Residual Functional Capacity Assessment and SSR 96-8p

Finally, Lillestrand alleges that the ALJ violated SSR 96-8p because the her RFC assessment did not conduct a function-by-function analysis of her limitations. Pl.'s Opening Br. 14. SSR 96-8p states that an RFC assessment is "a function-by-function assessment based upon all of the *relevant* evidence of an individual's ability to do work-related activities." SSR 96-8p at *3 (*available at* 1996 WL 374184) (emphasis added). However, the Commissioner's regulations do not require an ALJ's RFC assessment to discuss a claimant's limitations with respect to each of the fifty-four work functions. 20 C.F.R. § 404.1545, 416.945. The Ninth Circuit has explicitly held that, "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss*, 427 F.3d at 1217.

The ALJ did not properly address the medical evidence. Therefore, this court cannot determine the efficacy of any findings the ALJ made under SSR 96-8p. Upon remand the ALJ she must properly apply SSR 96-8p.

### REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative

proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill*, 12 F.3d at 919); *Nguyen* , 100 F.3d at 1466-67; *Bunnell*, 947 F.2d at 348.

Here, the ALJ erroneously assessed Lillestrand's testimony, the opinions of Drs. Sutherland and O'Shea, and the lay witness testimony. The ALJ also omitted discussion of Drs. Dodson, Kim, and Vigeland. Though the ALJ called a vocational expert to Lillestrand's hearing, both the ALJ and Lillestrand's counsel failed to elicit testimony from the vocational expert regarding the effect of limitations described by Lillestrand and her husband, as well as the omitted medical evidence. Tr. 370-72. In such instances, award of benefits is inappropriate. *Harman*, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly evaluated evidence cited above. *Id.* If necessary, the ALJ must then revise her RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Lillestrand's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any

revised findings.

## **ORDER**

For these reasons, this court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this   21st   day of August, 2009.

                                              /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge